UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**SUNRISE MARINE, LLC,**

        **Plaintiff,**

v.                                     Case No. 25-CV-722

**AQUA TRACTION MARINE, LLC,**

        **Defendant.**

---

## DECISION AND ORDER

---

**1. Background**

Aqua Traction Marine, LLC, manufactures custom flooring for recreational boats. (ECF No. 17, ¶ 2.) Sunrise Marine, LLC, is one of Aqua Traction's dealers and has been since 2019. (ECF No. 17, ¶¶ 9-10; *see also* ECF No. 17-1 (dealership agreement).) Its exclusive territory is comprised of roughly the eastern third of Wisconsin and a small portion of the Upper Peninsula of Michigan. (ECF Nos. 17, ¶ 16; 17-1 at 7-8.)

Under the dealership agreement, Aqua Traction promised to "protect each dealers [sic] territory and ensure no additional AquaTraction dealers will overlap." (ECF No. 17-1 at 7.) The dealership agreement also recognized that "[o]ccasionally an opportunity will present itself to a dealer, [sic] that exists in another dealer's

territory." (ECF No. 17-1 at 9.) Thus, the agreement outlined a process for resolving such conflicts:

> The dealer who identifies the opportunity must set-up a conference call with both dealers and either Mark Caspers or Josh Clymer. The dealer should never make promises or agreements until the 2 full-service dealers and AquaTraction have agreed to proceeding forward. In this type of scenario, Aquatraction [sic] and the 2 dealers will have a [sic] informal phone call to develop details/expectations. AquaTraction will develop an agreement, of which all 3 parties need to agree too [sic], prior to working out a deal with the customer or potential opportunity.

(ECF No. 17-1 at 9.)

In 2022, Sunrise Marine began to hear rumors that C. Martin Contracting, LLC, which is another Aqua Traction dealer and does business as Aqua Traction of Central Wisconsin, was working in Sunrise Marine's exclusive territory. (ECF No. 17, ¶ 20.) When Sunrise Marine asked Josh Clymer of Aqua Traction if it had granted another dealership in Wisconsin, Clymer refused to provide any information. (ECF No. 17, ¶ 22.)

In early 2023, Sunrise Marine contacted Collin Martin of Central Wisconsin and requested that they meet to discuss their businesses. (ECF No. 17, ¶ 23.) Soon after the dealers met, Sunrise Marine heard that Central Wisconsin was actively seeking customers in Sunrise Marine's territory. (ECF No. 17, ¶ 24.) Sunrise Marine's investigation of Aqua Traction's work orders and Martin's social media accounts corroborated these suspicions. (ECF No. 17, ¶ 25.)

Sunrise Marine complained to Aqua Traction, and Clymer said he would take care of the matter. (ECF No. 17, ¶ 26.) But then Sunrise Marine learned that Central

Wisconsin was continuing to do business in Sunrise Marine's territory. This eventually led to an August 24, 2023, meeting with the principals of Aqua Traction, Sunrise Marine, and Central Wisconsin during which Martin acknowledged that Central Wisconsin had worked in Sunrise Marine's territory and Clymer noted that if Central Wisconsin continued to intrude on Sunrise Marine's territory, Aqua Traction could be sued. (ECF No. 17, ¶ 32.) Sunrise Marine agreed to put these past violations behind them and start over. (ECF No. 17, ¶ 33.)

On January 18, 2024, Sunrise Marine learned that Central Wisconsin was still doing business in Sunrise Marine's territory. (ECF No. 17, ¶ 34.) Sunrise Marine on February 1, 2024, renewed their concerns with Aqua Traction about Central Wisconsin's respect for Sunrise Marine's territory, which led to Aqua Traction stating that, going forward, it would strictly enforce the dealers' respective territories. (*See* ECF No. 17, ¶¶ 39-43.)

Sunrise Marine continued to investigate if Central Wisconsin had performed work for customers inside Sunrise Marine's exclusive territory, eventually leading Aqua Traction to state on November 11, 2024, that it would "not spend more time on this situation." (ECF No. 17, ¶¶ 46-57.) Sunrise Marine went on to learn that Martin, the principal of Central Wisconsin, had opened a new business in Sunrise Marine's territory under the name Premier Marine as a means to disguise that Central Wisconsin was working within Sunrise Marine's territory. (ECF No. 17, ¶ 60.) Sunrise Marine also learned in February 2025, that Central Wisconsin was installing Aqua Traction products at an Oshkosh boat dealership, but Central Wisconsin's work

was so poor that the dealer cancelled the order and refused to install Aqua Traction products in any of his other boats. (ECF No. 17, ¶¶ 61-62.)

Sunrise Marine filed this action on April 11, 2025, originally in Oconto County Circuit Court. (ECF No. 17, ¶ 63.) Aqua Traction then removed the action to this court based on the complete diversity of the parties. (ECF Nos. 1, ¶ 9; 2.)

Sunrise Marine alleged that Aqua Traction violated the Wisconsin Fair Dealership Law (WFDL), Wis. Stat. ch. 135, by substantially changing the competitive circumstances of the dealership agreement without good cause. *See* Wis. Stat. § 135.065; (ECF No. 17, ¶¶ 72-88.) It also included claims for breach of contract (ECF No. 17, ¶¶ 90-95), and breach of the duty of good faith and fair dealing (ECF No. 17, ¶¶ 97-101).

Aqua Traction has moved to dismiss the action. (ECF No. 18.) That motion is now ready for resolution.

## 2. Motion to Dismiss

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

In evaluating a motion to dismiss under Rule 12(b)(6), courts must "accept the well-pleaded facts in the complaint as true"; however, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Courts also "draw all reasonable inferences from these facts in favor of the plaintiff." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). At the motion to dismiss stage, the court may dismiss only claims. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). It will not dismiss parts of claims or particular theories of relief. *Id.*

While a plaintiff is not required to plead detailed factual allegations, there must be more than labels and conclusions. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (holding that a complaint must provide sufficient facts to raise a right to relief above the speculative level, and mere labels or formulaic recitations are insufficient under Rule 12(b)(6)). Nevertheless, a complaint "need not allege each evidentiary element of a legal theory to survive a motion to dismiss." *Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510–14 (2002)).

3. Analysis

   3.1. Statute of Limitations

The statute of limitations is an affirmative defense. *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014). As such, a plaintiff need not anticipate it and plead around it in a complaint. *Id.* Nonetheless, "[w]hile a

5

Case 1:25-cv-00722-BBC   Filed 01/06/26   Page 5 of 13   Document 23

statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). "In other words, the plaintiff must affirmatively plead himself out of court; the complaint must 'plainly reveal that the action is untimely under the governing statute of limitations.'" *Chi. Bldg. Design,* 770 F.3d at 614 (brackets omitted) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).

An action under the WFDL "shall be commenced within one year after the cause of action accrues or be barred." Wis. Stat. § 893.93(3)(b). Aqua Traction notes that, although Sunrise Marine did not bring this action until April 2025, its allegations date back to November 2022. Thus, it argues that the WFDL claim is barred by the statute of limitations.

Sunrise Marine responds that its claim did not accrue until November 2024 when Aqua Traction essentially threw up its hands regarding Central Wisconsin's alleged infringement of Sunrise Marine's territory and said it was no longer going to try to remedy the situation. It was at this point that Aqua Traction "substantially change[d] the competitive circumstances of [the] dealership agreement without good cause," Wis. Stat. § 135.03, thus violating the WFDL.

"In Wisconsin, a cause of action generally accrues for statute of limitations purposes 'where there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it.'"

*Les Moise, Inc. v. Rossignol Ski Co.*, 122 Wis. 2d 51, 57, 361 N.W.2d 653, 656 (1985) (quoting *Barry v. Minahan*, 127 Wis. 570, 573, 107 N.W. 488, 490 (1906)).

Aqua Traction has failed to prove that Sunrise Marine's WFDL claim necessarily accrued more than a year before it filed this action. Isolated instances of a grantor failing to safeguard a dealer's exclusive territory likely would not constitute a substantial change in the competitive circumstances so as to give rise to a claim under the WFDL. When those incidents cease to be isolated but instead become a pattern that constitutes a substantial change in the competitive circumstances is amorphous, thus making such analysis particularly inappropriate for a motion to dismiss. But a grantor's disavowal of any duty to further protect a dealer's exclusive territory in light of ongoing encroachment will likely mark the accrual of a WFDL claim. Sunrise Marine alleges that prior to November 11, 2024, Aqua Traction had expressed an intent to address Central Wisconsin's encroachment. Thus, it is plausible that Sunrise Marine's WFDL claim accrued within one year of it filing this action. Accordingly, the statute of limitation does not require dismissal of Sunrise Marine's WFDL claim.

### 3.2. Wisconsin Fair Dealership Law

"No grantor, directly or through any officer, agent or employee, may terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership agreement without good cause. The burden of proving good cause is on the grantor." Wis. Stat. § 135.03.

Aqua Traction argues that Sunrise Marine has failed to state a claim for a violation of the WFDL because the WFDL requires an affirmative action by the grantor; inaction will not suffice. (ECF No. 19 at 16-17.) However, it offers no authority for this argument other than citing to a case where the alleged violation happened to be the affirmative act of the grantor appointing additional dealers within a dealer's exclusive territory. (ECF No. 19 at 16-17 (citing *Frieburg Farm Equip., Inc. v. Van Dale, Inc.*, 978 F.2d 395, 400-01 (7th Cir. 1992)). Thus, Aqua Traction demonstrates only what is undisputed—that a grantor may violate the WFDL through affirmative actions.

Nothing in the language, structure, or history of Wis. Stat. § 135.03 requires a violation to be premised on an affirmative act by the grantor. To impose such a limitation would be inconsistent the legislature's statement that the WFDL should be liberally construed to promote its remedial purposes. *See* Wis. Stat. § 135.025. A grantor that, absent good cause, simply stops supplying a dealer would undoubtedly violate Wis. Stat. § 135.03 notwithstanding the fact that a refusal to supply would be characterized as inaction. Similarly, a grantor that abandons its obligation to safeguard a dealer's exclusive territory from encroachment is an inaction that plausibly violates the WFDL.

The dealership agreement expressly stated, "AquaTraction will protect each dealers [sic] territory and ensure no additional AquaTraction dealers will overlap." (ECF No. 17-1 at 7.) Aqua Traction's argument that this sentence obligated it only to ensure that no dealers' territories overlapped is without support both grammatically

8
Case 1:25-cv-00722-BBC   Filed 01/06/26   Page 8 of 13   Document 23

and legally. The use of the conjunctive "and" resulted in the imposition of two obligations: (1) to protect each dealer's territory; and (2) to ensure no dealers' territories overlapped. The latter may be a form of the former, but it does not constitute the exclusive means by which Aqua Traction was obligated to protect a dealer's territory. Aqua Traction's argument continues to stumble in light of the dealership agreement repeating its obligation to protect each dealer's territory, this time without any reference to the overlapping of territories: "Aqua Traction is obligated to protecting [sic] full-service dealer territory, as well as working directly with dealers to grow brand to ensure total success." (ECF No. 17-1 at 13.)

Aqua Traction also underscores Sunrise Marine's allegations that Aqua Traction made no effort to police whether the products it shipped were being used outside the recipient dealer's territory. (ECF No. 19 at 18-19.) It notes that nothing in the dealership agreement required it to supervise shipments in this manner, and therefore, it argues, this cannot constitute a violation of the WFDL. (ECF No. 19 at 18-19.)

Aqua Traction misapprehends that nature of Sunrise Marine's allegations. Sunrise Marine's discussion of Aqua Traction's failure to monitor shipments, and its decision to begin monitoring those shipments after Sunrise Marine filed this lawsuit, are offered to underscore that Aqua Traction could have been doing this all along. Thus, Sunrise Marine's reference to monitoring shipments in this manner simply presents one way in which Aqua Traction allegedly could have complied with its obligation to protect Sunrise Marine's territory. Sunrise Marine has not alleged that
9

Aqua Traction's failure to monitor its shipments in and of itself violated the WFDL. These allegations are also relevant to Sunrise Marine's good faith and fair dealing claim.

Finally, Aqua Traction argues that Sunrise Marine has failed to state a claim for a violation of the WFDL because mere impacts on profitability do not constitute claims under the WFDL. (ECF No. 19 at 19-20.) It points to *Techmaster, Inc. v. Compact Automation Prods., LLC*, 462 F. Supp. 2d 932, 941 (W.D. Wis. 2006), where the court quoted a treatise on the WFDL that said: "The action must represent a change in *competitive* circumstances. That is, presumably, it must relate to a matter affecting the dealer's ability to compete effectively and not merely to a matter affecting the dealer's overall profitability." *Id.* (emphasis in original) (quoting Michael Bowen & Brian Butler, *The Wisconsin Fair Dealership Law* § 7.11 (2d ed. 2005)).

The treatise (or the court) was not saying that grantor actions which cut a dealer's profits are not actionable under the WFDL. A change in profitability may be the most obvious and common harm allegedly suffered by dealers in a WFDL action; the extent of the change being a common measure of whether a change was substantial. The point the treatise was underscoring was that not everything that affects a dealer's profits also affects a dealer's competitive circumstances so as to be actionable under the WFDL. For example, a change that shrinks all dealers' margins might not be actionable whereas a change that affects only one dealer may be. The WFDL applies only to changes to *competitive* circumstances.

While Central Wisconsin's alleged encroachment into Sunrise Marine's territory may lie at the heart of this action, Sunrise Marine is not seeking to hold Aqua Traction responsible for Central Wisconsin's misdeeds. Rather, Sunrise Marine's claims focus on Aqua Traction's conduct vis-à-vis its obligations to protect Sunrise Marine's territory. Aqua Traction's alleged actions and inactions plausibly amounted to a substantial change in the competitive circumstance of a dealership agreement without good cause, and accordingly, the court will deny Aqua Traction's motion to dismiss Sunrise Marine's WFDL claim.

### 3.3. Breach of Contract

Aqua Traction argues that Sunrise Marine has failed to state a breach of contract claim because it "has failed to allege that Aqua Traction breached the Dealer Agreement." (ECF No. 19 at 20.)

As discussed above, the dealership agreement obligated Aqua Traction to protect a dealer's exclusive territory. That obligation was not limited, as Aqua Traction suggests, to merely avoiding the formal designation of overlapping territories. Nor does Sunrise Marine allege breach simply because another dealer performed work within its territory. Instead, Sunrise Marine alleges that Aqua Traction failed to take reasonable and available steps to enforce the territorial protections it promised, despite having the contractual authority to do so.

Sunrise Marine's allegations that Aqua Traction eventually took certain measures aimed at addressing territorial violations do not defeat its breach claim at the pleading stage. Rather, those allegations support a plausible inference that Aqua

11
Case 1:25-cv-00722-BBC    Filed 01/06/26    Page 11 of 13    Document 23

Traction had the ability to protect Sunrise Marine's territory but failed to do so adequately or in a timely manner. Whether Aqua Traction's actions were sufficient to satisfy its contractual obligation is a fact intensive inquiry that cannot be resolved on a motion to dismiss.

At a minimum, the scope of Aqua Traction's obligation to "protect" a dealer's territory is unclear under the Dealer Agreement. That uncertainty alone renders dismissal inappropriate at this stage. Accordingly, the court will deny Aqua Traction's motion to dismiss Sunrise Marine's breach of contract claim.

### 3.4. Good Faith and Fair Dealing

Under Wisconsin law, a party has an obligation to comply with not only the letter, but the spirit, of a contract. *See Betco Corp. v. Peacock*, 876 F.3d 306, 310 (7th Cir. 2017). Every contract contains the implied duty of good faith and fair dealing that "accompanies not just what the contract says but also what the parties expected to occur." *Id.* (citing Wis. JI-Civil 3044); *Foseid v. State Bank*, 197 Wis. 2d 772, 796-97, 541 N.W.2d 203, 213 (Ct. App. 1995). Although courts are accustomed to seeing a good faith and fair dealing claim pled alongside breach of contract claim, a good faith and fair dealing claim is not merely a breach of contract claim by another name.

Sunrise Marine alleges that Aqua Traction breached the duty of good faith and fair dealing under the dealership agreement by, among other things, refusing to take any action to verify that the products it shipped were used by its dealers within that dealer's territory. (ECF No. 21 at 33.) This is the sort of conduct that, although not explicitly mandated under the contract, could nonetheless be seen as undermining

12

Case 1:25-cv-00722-BBC  Filed 01/06/26  Page 12 of 13  Document 23

the spirit of the parties' bargain and therefore plausibly may constitute a breach of good faith and fair dealing. Because Sunrise Marine has pled a plausible good faith and fair dealing claim, Aqua Traction's motion to dismiss this claim will be denied.

Accordingly, for the reasons set forth in this decision, **IT IS THEREFORE ORDERED** that Aqua Traction Marine, LLC's motion to dismiss Sunrise Marine, LLC's amended complaint is **denied**.

Dated at Green Bay, Wisconsin this 6th day of January, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
U.S. District Judge
